IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| JEFFREY W. MILLS<br>920 5th Street<br>Laurel, Maryland 20707<br><br>     Plaintiff,<br><br>  v.<br><br>JAMES T. SMITH, JR., SECRETARY,<br>MARYLAND DEPARTMENT OF<br>TRANSPORTATION<br>7201 Corporate Center Drive<br>Hanover, Maryland 21076<br><br>SERVE:  Douglas F. Gansler,<br>Office of the Maryland Attorney General<br>200 St Paul Pl, Baltimore, MD 21202<br><br><br>     Defendant. | Case No: _____ |

## CIVIL COMPLAINT

**NOW COMES** Plaintiff, James W. Mills, by and through his undersigned counsel, and, pursuant to Fed. R. Civ. P. 8 and 10, files this civil complaint for damages set forth as follows:

**JURISDICTION AND VENUE**

1.      This Complaint is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3 and 42 U.S.C. §§ 1981 and 1983, and, as this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims.  Further, Plaintiff has alleged common law claims arising under state law, under the Maryland Human Relations Act, Md. Code Ann. State Gov't. Art. §20-606, and since those claims are factually inter-related with Plaintiff's claims arising under federal law, this Court should assert its pendent jurisdiction over such claims.

1

2. Venue is proper in this judicial district as the claims alleged in this Complaint occurred within this judicial district and Defendant is a government employer that is subject to the jurisdiction of this Court.

3. Prior to bringing this action, Plaintiff timely filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Human Relations Commission ("MHRC") alleging an unlawful employment practice by Defendant. On December 9, 2013, Plaintiff received a Dismissal and Notice of Rights letter from the EEOC. This action is being brought within two years of the alleged unlawful employment practice.

## PARTIES

4. At all times relevant to this Complaint, Plaintiff, Jeffery W. Mills, who is African American, was an "employee" of Defendant, as defined by Title VII and the Maryland Human Relations Act ("MHRA") and a resident of Prince George's County and the State of Maryland.

5. Defendant Smith is the Secretary of the State of Maryland Department of Transportation ("MDOT"), an executive department of the State of Maryland, and directs and controls the operations of its subsidiary organization, the State of Maryland State Highway Administration ("SHA"). The SHA is responsible for providing a safe, well-maintained, reliable highway system that enables mobility choices for Maryland citizens and supports, Maryland's communities, economy and environment. Defendant is an "employer" as defined by Title VII and the MHRA.

## ADMINISTRATIVE PROCEDURES

6. Plaintiff timely executed his Charge of Discrimination against the Defendant with the EEOC on or about June 13, 2013. It was assigned Charge No. 531-2013-1755. A copy of that

Charge of Discrimination, Charge No. 531-2012-00127C, is attached as Exhibit 1. On December 9, 2013, Plaintiff received his Dismissal and Notice of Rights letter from the EEOC. Exhibit 2.

7. The Maryland Human Relations Commission is recognized as a deferral agency by the EEOC.

8. The discriminatory acts complained of in this Complaint began in April 2013, less than two (2) years from this filing.

9. Plaintiff therefore invokes his statutory right to sue in that he has satisfied all administrative and judicial prerequisites to the institution of this action and has elected to bring this action for relief in State of Maryland Courts.

## STATEMENT OF FACTS

10. Plaintiff, who is African American, is employed by SHA as a Facility Maintenance Technician III, assigned to the Laurel Shop, within SHA's District 3, which encompasses Prince George's and Montgomery Counties.

11. Plaintiff began his employment with SHA in April 2011 as a maintenance worker in SHA's Upper Marlboro Shop, also within District 3.

12. Plaintiff performed those duties successfully and, in August 2012, at his request, was transferred to the Facility Maintenance Technician III position at the Laurel Shop.

13. At all times relevant to this Complaint, the workforce in the Laurel Shop was comprised substantially of African Americans, approaching 90% representation in that workforce. Conversely, the leadership team was comprised substantially of Caucasian managers, approaching 90% Caucasian representation on the management team.

14.     One member of that management team was Guy David Colburn, a Caucasian team leader in the Laurel Shop.  Colburn frequently used illegal drugs at the Laurel Shop and was counseled about such activities.  Nevertheless, at all relevant times, Colburn was allowed to remain as a team leader and as a lead worker.

15.     Beginning on April 24, 2013, Colburn began to direct racial epithets toward Plaintiff.  At that time while wearing an offensive t-shirt that depicted the Confederate battle flag, Colburn repeatedly called Plaintiff "Tarzan," which Plaintiff understood to be a racially derogatory term. The comments were not made in jest and Plaintiff felt threatened by them.

16.     The comments referenced above were contrary to directives from the SHA administrator and the State of Maryland about avoiding abuse and harassment in the workplace.  He reported Colburn's comments to District 3 management and informed Defendant that he was offended by Colburn's comments and actions and felt that such comments were racial in nature.

17.     In reporting Colburn's actions, Plaintiff was engaging in activities protected by both state and federal laws.

18.     In May 2013, an investigation was conducted by SHA, however, Defendant concluded that Plaintiff's complaint was unsubstantiated and no effective corrective action was taken.

19.     Following his engaging in protected activities by reporting Colburn's comments, Plaintiff was subjected to increased harassment and threats from Colburn and Plaintiff's co-workers. Plaintiff was scorned and vilified, being called derogatory names, including "snitch," and "rat."

20.     Colburn attempted to retaliate against Plaintiff, including, but not limited to attempting to provoke fights with Plaintiff in the Laurel Shop.

21.     Moreover, Plaintiff was intimidated at work, told to "watch his step" by supervisors and falsely was accused of not performing his jobs appropriately.

4

22. On June 13, 2013, Plaintiff was working on an SHA project on Route 450. While he was in his truck awaiting instructions from a supervisor, Colburn, again wearing a racially-charge t-shirt with the Confederate battle flag, aggressively came up to Plaintiff's truck and angrily and threateningly said in a loud voice, "nigger, if you do not want to be out here, take your truck and go home." Colburn was not jesting or joking when he made that statement.

23. Colburn's vicious racial epithet left Plaintiff extremely upset. He got out of his truck and immediately reported Colburn's comment to the supervisor, Kevin Chadwell. He also told Chadwell that he found Colburn's rebel t-shirt offensive. Chadwell dismissed Plaintiff's complaint, telling Plaintiff that he "did not have time to deal with yours and Dave's situation."

24. Subsequently, Plaintiff walked up to Colburn and told him that his t-shirt was inappropriate and should be covered up with appropriate attire.

25. In response, Colburn escalated the situation and tried to incite Plaintiff into a physical altercation. He moved closer to Plaintiff, touched him and dared Plaintiff to hit him. Simultaneously, Colburn grabbed a knife on his belt. Plaintiff told Colburn that he was not going to feed into his ignorance and warned Colburn that, if he pulled his knife, he would defend himself. Plaintiff told Colburn that he was not going to give Colburn what he wanted, a fight and that he was going to continue to do his job. Subsequently, although Plaintiff was extremely upset by Colburn assault, he was able to resume and complete his work activities.

26. Plaintiff immediately reported Colburn's actions to Laurel Shop and District 3 management. He was informed that District 3 would conduct an investigation.

27. On June 24, 2013, Plaintiff met with the District 3 EEO office, Valentine Liu regarding his complaint. He described the June 13th incident in detail. He also told Mr. Liu that he was extremely upset by Colburn's actions and the Laurel Shop's apparent unwillingness to control

Colburn and the harassing and intimidating atmosphere that existed even after the diversity training that had been conducted at the Laurel Shop in May 2013.

28. Plaintiff filed a formal complaint and a grievance with the SHA regarding Colburn's actions and the hostile and offensive work environment at the Laurel Shop. On August 15, 2013, the Office of the Statewide Equal Opportunity Coordinator ("OSEEOC") as the designee of the Secretary of Budget and Management, found that Plaintiff was subjected to "race discrimination, intimidation, threats, and verbal abuse, which created a hostile work environment."

29. Subsequent to June 13, 2013, the hostile and offensive work environment continued to flourish at the Laurel Shop. Plaintiff was subjected to threats and insults while at work. On August 10, 2013, Plaintiff was assaulted and battered by a Laurel Shop supervisor at a worksite. The atmosphere became so intense and intimidating that he feared for his safety both while at work and while travelling home from work. Colburn continued to make racial comments about Plaintiff and other African American workers.

30. Although another diversity workshop was held in September 2013, no effective corrective action was taken and the hostile and offensive workplace has continued.

31. The hostile and offensive workplace created and condoned at the Laurel Shop has interfered with Plaintiff's ability to perform his job and has caused Plaintiff extreme emotional distress.

32. Plaintiff has suffered economic losses resulting from Defendant's actions.

33. Plaintiff was interfered with, restrained and retaliated against for exercising his rights under Title VII.

34. Defendant's actions created a hostile, offensive and abusive work environment because of Plaintiff's race and his engaging in protected activities under Title VII.

35. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this lawsuit.

## COUNT I

### CREATION OF A HOSTILE AND ABUSIVE WORK ENVIRONMENT IN VIOLATION OF § 703 OF TITLE VII

36. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 35 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

37. Between April 2013 and the present, because of his race and in retaliation for opposing unlawful employment practices, Defendant created and maintained a hostile and abusive work environment that was severe and offensive towards Plaintiff.

38. Such conduct was sustained and not isolated and had a severe deleterious effect on Plaintiff's physical and mental health and job performance.

39. Because of the hostile, offensive and abusive work environment created by Defendant, Plaintiff has suffered immediate economic losses and loss of job status and prestige.

40. Defendant's actions in creating a hostile, offensive and abusive work environment based on Plaintiff's race and in retaliation for his opposing unlawful employment practices were unlawful and in violation of the § 703 of Title VII, 42 U.S.C. § 2000e-2.

41. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

## UNLAWFUL RETALIATION
## IN VIOLATION OF § 704 OF TITLE VII

42.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 41 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

43.     Between April 2013 and the present, Plaintiff took steps to oppose unlawful employment practices under Title VII by making formal and informal complaints and by participating in proceedings under Title VII.  At all relevant times, his supervisors were aware of such protected activities.

44.     After Plaintiff opposed practices made unlawful by Title VII and participated in activities protected under Title VII, Plaintiff endured unlawful retaliation from his supervisors, including receiving abusive and hostile treatment from his supervisors and co-workers, subjecting him a campaign of intimidation, including, but not limited to, racial epithets and epithets directly related to him exercising his statutorily-protected rights, subjecting him to threats, assault and battery.

45.     Because of Defendant's continued egregious retaliation campaign, beginning in April 2013 and continuing to the present time, Plaintiff has suffered immediate economic losses and loss of job status and prestige.

46.     Plaintiff's opposition to practices made unlawful under Title VII a motivating factor in Defendant's actions described above.

47.     The reasons articulated by Defendant for its actions are false and pretextual.

48.     Defendant's retaliatory actions were unlawful and in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3.

49. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT III

### CREATION OF A HOSTILE AND ABUSIVE WORK ENVIRONMENT IN VIOLATION ARTICLE 49B

50. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 49 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

51. Between April 2013 and the present, because of his race and in retaliation for his having opposed unlawful employment practices, Defendant created and maintained a hostile and abusive work environment that was severe and offensive towards Plaintiff.

52. Such conduct was sustained and not isolated and had a severe deleterious effect on Plaintiff's physical and mental health and job performance.

53. Because of the hostile, offensive and abusive work environment created by Defendant, Plaintiff has suffered immediate economic losses and loss of job status and prestige.

54. Defendant's actions in creating a hostile, offensive and abusive work environment based on Plaintiff's race and in retaliation for his opposing unlawful employment practices were unlawful and in violation of the Maryland Human Relations Act, Md. Code Ann. State Gov't Art. § 20-606(a)(1)(i).

55. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IV

## UNLAWFUL RETALIATION
## IN VIOLATION OF ARTICLE 49B

56.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 55 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

57.     Between April 2013 and the present, Plaintiff took steps to oppose unlawful employment practices under the Maryland Human Relations Act by making formal and informal complaints and by participating in proceedings under the Maryland Human Relations Act.  At all relevant times, his supervisors were aware of such protected activities.

58.     After Plaintiff opposed practices made unlawful by Maryland Human Relations Act  and participated in activities protected under the Maryland Human Relations Act, Plaintiff endured unlawful retaliation from  his supervisors, including receiving abusive and hostile treatment from his supervisors and co-workers, subjecting him a campaign of intimidation, including, but not limited to, racial epithets and epithets directly related to him exercising his statutorily-protected rights, subjecting him to threats, assault and battery.

59.     Because of Defendant's continued egregious retaliation campaign, beginning in April 2013 and continuing to the present time, Plaintiff has suffered immediate economic losses and loss of job status and prestige.

60.     Plaintiff's opposition to practices made unlawful under Title VII a motivating factor in Defendant's actions described above.

61.     The reasons articulated by Defendant for its actions are false and pretextual.

62.     Defendant's retaliatory actions were unlawful and in violation of the Maryland Human Relations Act, Md. Code Ann. State Gov't. Art. § 20-606(f).

63.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT V

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1871& §1983

64.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 63 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

65.     Plaintiff avers that, as described above, Defendant, acting under color of law, harbors, implements, administers and maintains personnel policies and practices at the Laurel Shop that discriminate in the terms and conditions of employment for Plaintiff and other African American employees at that location.

66.     Those practices and policies involve creating a hostile and offensive workplace toward African American employees, including, Plaintiff, where such employees are systematically subjected to racially inflammatory and offensive comments and epithets and retaliation toward those, like Plaintiff, that exercise their statutory rights by opposing such practices or by participating in EEO activities.

67.     That hostile and offensive workplace has had the effect of demeaning and traumatizing African American employees at the Laurel Shop, depriving them of their opportunity to work in a workplace free from stigmatizing racial comments.

68.     Such practices have adversely affected the African American employees in the Laurel Shop by requiring them to work in degrading, unlawful conditions.

69. Non-African American employees at the Laurel Shop are not subjected to the practice of racial epithets directed toward African American employees and the hostile and offensive working conditions and retaliatory practices to which African American employees, including Plaintiff are subjected.

70. Defendant's adverse actions described above, were taken under color of law and violated Plaintiff's and other African American employees' rights secured by the U.S. Constitution and statutes, including the Fourteenth Amendment, to the equal protection of the laws.

71. Plaintiff and African American employees at the Laurel Shop have sustained economic and non-economic injuries, including, but not limited to, lost wages and benefits, medical expenses, costs and reasonable attorney's fees.

## COUNT VI

### RACIAL DISCRIMINATION
### IN VIOLATION OF §1981 & TITLE VII

72. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 71 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

73. Plaintiff's race is a classification protected under § 1981 and Title VII against invidious discrimination. Between April 2013 and the present, because of his race, Defendant created and subjected Plaintiff to discrimination in the terms and conditions of his employment in violation of Title VII.

74. Such conduct was sustained and not isolated and had a severe deleterious effect on Plaintiff's physical and mental health and job performance.

75. Because of the hostile, offensive and abusive work environment created by Defendant, Plaintiff has suffered immediate economic losses and loss of job status and prestige.

76. Defendant's actions based on Plaintiff's race were unlawful and in violation of his rights under the Civil Rights Act of 1870, 42 U.S.C. § 1981, including, but not limited to, his right to the full and equal benefit and protection of the all laws for the security of persons and property as is enjoyed by white citizens.

77. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT VII

### VIOLATION OF ARTICLE 24 OF THE STATE OF MARYLAND DECLARATION OF RIGHTS

78. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 77 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

79. Plaintiff's race is a classification protected under Article 24 of the State of Maryland Declaration of Rights.

80. At all times relevant to this Complaint, Plaintiff had a liberty or property interest protected by Article 24 of the Declaration of Rights.

81. At all times relevant to this Complaint, Defendant was a "state actor" for purposes of Article 24.

82. Between April 2013 and the present, because of his race and in retaliation for his having opposed unlawful employment practices, Defendant created and maintained a hostile and abusive work environment toward Plaintiff.

83 Such conduct was sustained and not isolated and had a severe deleterious effect on Plaintiff's physical and mental health and job performance.

84. Because of the hostile, offensive and abusive work environment created by Defendant, Plaintiff has suffered immediate economic losses and loss of job status and prestige.

85. Defendant's actions in creating a hostile, offensive and abusive work environment based on Plaintiff's race and in retaliation for his opposing unlawful employment practices were unlawful and in violation of his liberty and property rights under Article 24 of the Declaration of Rights, including, but not limited to, his right to the full and equal benefit and protection of the laws for the liberty and security of persons and property as is enjoyed by white citizens of Maryland.

86. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court grant him the following relief, namely:

(i) That this Court determine that the employment practices complained of in this Complaint are unlawful in that they violate Title VII, the MHRA, 42 U.S.C. §§ 1981 and 1983;

(ii) That Defendant pay Plaintiff the sum of $600,000 for his actual and compensatory damages and any and all equitable relief; and

(iii) That Defendant Smith and SHA pay Plaintiff's costs and expenses and reasonable attorney's fees incurred in connection with this action.

**PLAINTIFF DEMANDS A JURY TRIAL.**

DATED:   December 10, 2013.

                              Respectfully submitted,

                              Nathaniel D. Johnson (MD # 14729)
                              Attorney for Plaintiff
                              10665 Stanhaven Place, Suite 3101
                              White Plains, Maryland  20695
                              (301) 645-9103/888-492-9434 (fax)
                              ndjesquire@gmail.com